# Memorandum Of Claim

## I. Introductory Statement

The following document is attached to fully outline the elements of the claim being filed. It is done so due to the limited formatting and length options provided by the Oklahoma Western District Court template for Pro Se litigants, which is found on their website. The information contained herein is true and correct, at the time of drafting, based on the belief and perspective of the Plaintiff.

## II. General Factual Allegations

1. 28 U.S.C. §1367 allows for State level statutes to be introduced via supplemental jurisdiction.

2. Raymond Eugene Baldwin III is the human being representing the *ens legis* person RAYMOND EUGENE BALDWIN III. For purposes of these proceedings, it includes any derivatives of said *ens legis* name related to matters with GLS.

3. Raymond Eugene Baldwin III had a contract which involved GLS.

4. Raymond Eugene Baldwin III was identified as RAYMOND BALDWIN in the contract with GLS.

5. Raymond Eugene Baldwin III had a loan payment plan with GLS.

6. Raymond Eugene Baldwin III had an account (numbered 2000726308) with GLS.

7. Raymond Eugene Baldwin III started making payments, via Electronic Funds Transfer ("EFT") as per the contractual agreement.

8. Raymond Eugene Baldwin III noticed that the contract stated, "Federal law and the law of the state of Oklahoma apply to this contract."

9. Raymond Eugene Baldwin III researched Oklahoma Statute 12A.

10. Oklahoma Statute 12A is the equivalent of the Uniform Commercial Code (U.C.C.) for the State of Oklahoma.

11. Raymond Eugene Baldwin III utilized Oklahoma Statute 12A, particularly §12A-3-101 through §12A-3-605 to understand negotiable instruments.

12. Raymond Eugene Baldwin III tendered an indorsed draft along with a letter of instruction to GLS.

13. The indorsed draft meets the definition of a negotiable instrument under 12A O.S. §12A-3-104.

14. The letter of instruction specified how the negotiable instrument, an indorsed draft, was to be redeemed for Federal Reserve Notes.

15. The letter of instruction outlined that it was intended to pay off the debt owed, at the time of drafting.

16. The instrument and letter were received and accepted by GLS, via Certified Mail, on November 17, 2024, in accordance with 12A O.S. §12A-3-409.
17. The letter of instruction attempted to illustrate the applicable State Statutes to GLS, along with the U.C.C., that applied to the situation.
18. GLS did not honor the instrument.
19. GLS did not follow the instructions contained in the letter of instruction.
20. GLS did not properly dishonor the instrument.
21. Raymond Eugene Baldwin III assumed the tender of payment to be refused.
22. Raymond Eugene Baldwin III expected GLS to properly discharge the debt per 12A O.S. §12A-3-603.
23. GLS continued to attempt to collect payments, without referencing the instrument they had accepted.
24. Raymond Eugene Baldwin III sent another letter with more details and supporting documents to GLS on December 20, 2024.
25. Raymond Eugene Baldwin III received a Notice of Default from GLS on December 20, 2024.
26. Raymond Eugene Baldwin III made several phone calls to attempt correction of the situation.
27. GLS threatened to send the account into repossession if they do not receive payment.

28. Raymond Eugene Baldwin III sent an Affidavit of Dispute to GLS to reiterate the situation.

29. Oklahoma Statute 12A §12A-3-310 outlines that the obligation should have been suspended, "…to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken…"

30. Raymond Eugene Baldwin III assumed that if an obligation is suspended, then the associated debt collection attempts were to be suspended as well, in their entirety, including repossession.

31. Raymond Eugene Baldwin III believes that payment was accepted on November 17, 2024.

32. Raymond Eugene Baldwin III sent an Affidavit of Dispute to GLS on January 17, 2025.

33. Raymond Eugene Baldwin III tried to contact GLS regarding the affidavit that was sent.

34. Raymond Eugene Baldwin III was not able to get in touch with the escalations department until January 23, 2025.

35. Raymond Eugene Baldwin III sent a copy of the affidavit via email after being able to recognize the correct email address to sent it to.

36. GLS sent an email on January 24, 2024, stating, "If payment is not received within four days, your account will be assigned for repossession."

37. Black's Law Dictionary (6ᵗʰ Edition) defines payment as, "…the performance of a duty, promise, or obligation, or discharge of a debt or liability, by the delivery of money or other value by a debtor to a creditor, where the money or other valuable thing is tendered and accepted as extinguishing debt or obligation in whole or in part."

38. Black's Law Dictionary (6ᵗʰ Edition) defines performance as, "The fulfillment or accomplishment of a promise, contract, or other obligation according to its terms, relieving such person of all further obligation or liability thereunder."

39. Black's Law Dictionary (6ᵗʰ Edition) defines refusal as, "…the declination of a request or demand, or the omission to comply with some requirement of law, as the result of a positive intention to disobey."

40. Black's Law Dictionary (6ᵗʰ Edition) defines tender as, "An offer of money." And continues with, "Tender, though usually used in connection with an offer to pay money, is properly used in connection with offer of property or performance of duty other than payment of money."

41. Black's Law Dictionary (6ᵗʰ Edition) defines peonage as, "A condition of servitude (prohibited by 13th Amendment) compelling persons to perform labor in order to pay off a debt."

42. Black's Law Dictionary (6ᵗʰ Edition) defines labor as, "Work; toil; service; mental or physical exertion."

43. Black's Law Dictionary (6th Edition) defines extortion as, "The obtaining of property from another induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

44. Black's Law Dictionary (6th Edition) defines compel as, "To urge forcefully; under extreme pressure. Word "compel" as used in constitutional right to be free from being compelled in a criminal case to be a witness against one's self means to be subjected to some coercion, fear, terror, inducement, trickery or threat--either physically or psychologically, blatantly or subtly; the hallmark of compulsion is the presence of some operative force producing an involuntary response."

45. Black's Law Dictionary (6th Edition) defines servitude as, "The state of a person who is subjected, voluntarily or otherwise, to another person as his servant."

46. 18 U.S.C. §1589 thoroughly outlines what constitutes as forced labor.

47. 15 U.S.C. §1692d thoroughly outlines harassment or abuse as it applies to debt collectors.

48. 15 U.S.C. §1692g thoroughly outlines validation of debts as it applies to debt collectors.

49. 22 U.S.C. §7102 defines debt bondage as, "The term "debt bondage" means the status or condition of a debtor arising from a pledge by the debtor of his or

her personal services or of those of a person under his or her control as a security for debt, if the value of those services as reasonably assessed is not applied toward the liquidation of the debt or the length and nature of those services are not respectively limited and defined."

50. 12 C.F.R. §215.3 thoroughly defines the term "Extension of Credit" as it will be used herein.

51. Raymond Eugene Baldwin III had many phone calls with agents at different levels of GLS. The contents of those calls is assumed, by the Plaintiff, to be hearsay unless GLS can provide the recordings of those calls.

### III. Count One – Violation of 18 U.S.C. §894 - Collection of Extensions of Credit By Extortionate Means

52. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

53. Plaintiff properly performed on the contract with the Defendant.

54. Plaintiff asserts that such performance has paid the debt in full.

55. Defendant has not performed on their contractual nor statutory obligations as expected by the Plaintiff.

56. Plaintiff has sent multiple forms of correspondence as an attempt to enforce proper action from the Defendant.

57. Defendant still continues to try to collect extension of credit.

58. Defendant believes that the Plaintiff still owes proper performance of contract.

59. Defendant still has not properly acted, neither in favor nor against, the Plaintiff's submission of tender of payment.

60. Defendant is now threatening to repossess the vehicle of the Plaintiff if the Plaintiff does not make more payments to get the "balance" current.

61. Defendant believes they have an official right to repossess the Plaintiff's vehicle.

62. Plaintiff is in a nonrepayment status due to solid belief that the debt is reconciled as soon as the Defendant acts in accordance with the contract, and thus, Federal and Oklahoma Statutes.

63. Defendant is punishing Plaintiff for nonrepayment via continued collections attempts and escalation into repossession of Plaintiff's vehicle.

### IV.   Count Two – Violation of 15 U.S.C. §1692d – Harassment or Abuse

64. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

65. Defendant has made negative remarks on Plaintiff's credit report.

66. Defendant will be attempting repossession of Plaintiff's property without intervention from these proceedings.

67. Having the current remarks as well as the upcoming repossession on the credit report of the Plaintiff will SEVERELY damage his reputation.

68. The effect on the reputation is that the Plaintiff cannot, or will not, properly perform on contractual obligations.

69. Repossessing the vehicle will be considered theft due to the belief that the Defendant does not have the proper authority to do so.

70. 15 U.S.C. §1692d states that, "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: **(1)** The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person."

71. Defendant's threat to repossess the vehicle, which is believed to be a criminal act, along with the damage to the Plaintiff's reputation, via credit report, are both tied to the reputation of the Plaintiff.

72. If the Defendant damages the vehicle in the repossession process, that may solidify the meeting of the conditions of 15 U.S.C. §1692d.

## V.     Count Three – Violation of Oklahoma Statute 12A Regarding Negotiable Instruments.

73. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same fore and effect as if the same were set forth at length herein.

74. Defendant refused tender of payment.

75. Defendant failed to discharge debt in accordance with 12A O.S. §12A-3-603.

76. Defendant proceeded in a manner that disregarded the tender of the negotiable instrument along with its letter of instruction, including a lack of acknowledgement that a tender of payment was even made.

77. Defendant failed to suspend the obligation of the Plaintiff in accordance with 12A O.S. §12A-3-310.

78. Defendant did not attempt to exchange the instrument tendered for Federal Reserve Notes per 12 U.S.C. §412 as instructed in the letter that accompanied the instrument.

79. Plaintiff informed Defendant that South Carolina Title 36 is that State's equivalent to the U.C.C.

80. South Carolina Title 36 carries the same legal weight in South Carolina that Oklahoma Statute 12A carries in Oklahoma.

81. South Carolina Title 36 and Oklahoma Statute 12A are extremely similar to the U.C.C. in language and structure.

82. South Carolina statutes were brought to the attention of the Defendant to further illustrate the proper course of action in the State where the correspondence was mailed to.

83. Plaintiff stated that Georgia Statutes, in particular Title 11, were cited due to the tender of payment being mailed there per the instructions on the draft.

84. Plaintiff cited as many of the State statutes that he thought necessary to show that the statutes still apply in spite of mostly citing the U.C.C. equivalents.

85. Plaintiff cited State statutes also because the U.C.C. is not a Federal Law.

86. All U.C.C. citations, South Carolina citations, and Georgia citations in the correspondence from the Plaintiff can be equated and cited in Oklahoma Statute 12A.