# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RAYMOND EUGENE BALDWIN III, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-25-121-D |
| GLOBAL LENDING SERVICES, LLC, | ) |
| Defendant. | ) |

## **ORDER**

Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint and Brief in Support [Doc. No. 7]. Plaintiff filed a Response [Doc. No. 8], and Defendant's deadline to file a reply has expired. Therefore, the matter is fully briefed and at issue.

## **BACKGROUND AND FACTUAL ALLEGATIONS**

This case arises from a lending relationship between Plaintiff and Defendant. Plaintiff alleges that he had a contract with Defendant, under which he was required to make loan payments. Am. Compl. at 6.[1] In the beginning, Plaintiff made payments as required, but at some point he "noticed that the contract stated, 'Federal law and the law of the state of Oklahoma apply to this contract.'" *Id.* at 7.[2] After researching "Oklahoma Statute 12A," Plaintiff "tendered an indorsed draft along with a letter of instruction to [Defendant]." *Id.* According to Plaintiff, the letter of instruction sent with the indorsed draft

---

[1] Plaintiff's Amended Complaint consists of the Court's form Complaint for a Civil Case, as well as Plaintiff's self-drafted "Memorandum of Claim." The majority of Plaintiff's factual allegations are in the Memorandum of Claim, but the Court refers to the entirety of the document as the "Amended Complaint."

[2] Citations refer to the Court's CM/ECF pagination at the top of each page.

informed Defendant that the indorsed draft "was intended to pay off the debt owed, at the time of drafting." *Id.*

Although Defendant received the indorsed draft, Plaintiff alleges that Defendant did not honor it and instead continued to attempt to collect payments on the loan. *Id.* at 8. Eventually, Defendant sent Plaintiff a notice of default, and Defendant "threatened to send the account into repossession . . . ." *Id.* Plaintiff continued to contact Defendant and explain his understanding of the indorsed draft and its impact on his loan obligations, but Defendant maintained its position that Plaintiff was in default. *Id.* at 8-9.

On January 27, 2025, Plaintiff filed suit, but he filed his Amended Complaint only four days later. In the Amended Complaint, Plaintiff asserts three claims: (1) "Collection of Extensions of Credit By Extortionate Means" in violation of 18 U.S.C. § 894; (2) "Harassment or Abuse" in violation of 15 U.S.C. § 1692d; and (3) "Violation of Oklahoma Statute 12A Regarding Negotiable Instruments." *Id.* at 12-16.

On March 24, 2025, Defendant filed the instant Motion, arguing that Plaintiff's claims should be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6).

## STANDARD OF DECISION

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court will accept as true all well-pled factual allegations and construe them in the light most favorable to Plaintiff. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010).

A complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but it does need "more than labels and conclusions." *Bell Atl. Corp. v.*

2

*Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Instead, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] formulaic recitation of the elements of a cause of action" does not provide grounds of a party's entitlement to relief. *Twombly*, 550 U.S. at 555.

"[T]he tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 663; *see also Twombly*, 550 U.S. at 558 ("[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (citation omitted)). Courts may "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## DISCUSSION

**I.    Plaintiff's factual allegations and arguments closely resemble the soundly rejected "vapor money" theory.**

Recall, Plaintiff alleges that he took out a loan with Defendant and initially made timely payments, as required by the parties' loan agreement. But after doing some research, Plaintiff concluded that he could pay off his loan and extinguish his payment obligations by simply presenting Defendant with a purported negotiable instrument (here, the indorsed draft). Plaintiff argues that, upon his presentment of the indorsed draft and letter of

3

instruction, Defendant was legally required to "either honor or dishonor the instrument pursuant to Oklahoma Statute 12A." Pl.'s Resp. at 2. Because Defendant did neither, its inaction "was considered a refusal and was supposed to discharge [Plaintiff's] debt back then, pursuant to the same statute." *Id.*

> The "vapor money" theory and its origins can generally be understood as follows:
>
> The genesis of the vapor money theory is that the decision by the United States in 1933 to discard the gold standard resulted in the federal government's bankruptcy, after which lenders have been creating unenforceable debts because they are lending credit rather than legal tender. Accordingly, under the vapor money theory, a loan imposes no repayment obligation if the indebtedness was funded with credit as opposed to hard currency. The essence of the vapor money theory is that the promissory notes (and similar instruments) are the equivalent of money that citizens literally create with their signatures.

*Mercado v. Transport Funding, LLC*, No. 2:23-cv-02052-HLT, 2025 WL 388661, at *3 (D. Kan. Feb. 4, 2025) (quoting *Thomas v. All In Credit Union*, No. 23-00215-TFM-B, 2023 WL 9197752, at *8 (S.D. Ala. 2023) (citation omitted), *report and recommendation adopted*, 2024 WL 312682 (S.D. Ala. 2024). Boiled down, the theory's proponents believe that they "somehow ha[ve] the ability to essentially convert a payment demand into legal tender and magically extinguish [their] debts." *Thomas*, 2023 WL 9197752, at *8.

Here, Plaintiff presented Defendant with an indorsed draft and letter of instruction. *See* Def.'s Mot. to Dismiss, Ex. 1 [Doc. No. 7-1].[3] Plaintiff argues that, because Defendant did not accept or reject the draft, his loan obligations were extinguished. *See* Pl.'s Resp. at

---

[3] Although Plaintiff's indorsed draft and letter of instruction were not attached to the Amended Complaint, the Court may consider them because they are central to his claims, and Plaintiff does not dispute their authenticity. *Francis v. APEX USA, Inc.*, 406 F. Supp. 3d 1206, 1209 (W.D. Okla. 2019).

2. Although Plaintiff does not use the phrase "vapor money," his theory is substantively the same—*i.e.*, by presenting Defendant with a negotiable instrument demanding that he be paid with Federal Reserve Notes, he extinguished his debt to Defendant.

The world would likely be a much different place if borrowers could send their bank a document similar to Plaintiff's indorsed draft and extinguish all of their outstanding debt. But the world, and the law, does not work that way. The Court, therefore, joins the host of other courts rejecting Plaintiff's "vapor money" theory. *See Mercado*, 2025 WL 388661, at *3 (listing courts that have "summarily, universally, and rightly rejected [the "vapor money"] theory).[4]

## II. Plaintiff otherwise fails to state a claim as to any of the three counts asserted in the Amended Complaint.

Setting aside his faulty legal theory, Plaintiff fails to state a claim as to any of the three counts asserted in the Amended Complaint. The Court briefly addresses each count in turn.

### A. Plaintiff fails to state a claim for "Collection of Extensions of Credit By Extortionate Means" in violation of 18 U.S.C. § 894.

Plaintiff invokes 18 U.S.C. § 894—which makes it a felony to use extortionate means to collect on any extension of credit—as the basis for his claim that "Defendant is punishing Plaintiff for nonrepayment via continued collections attempts and escalation into

---

[4] To be clear, it appears all of Plaintiff's claims are premised on the "vapor money" (or a similarly unfounded) theory. That alone is "sufficient to grant [Defendant's] Motion to Dismiss, as . . . these theories have been universally and emphatically rejected by numerous federal courts for at least the last 25 years." *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 214 (D. Conn. 2010). However, as explained in § II, Plaintiff fails to state a claim as to any of the counts asserted in the Amended Complaint.

repossession of Plaintiff's vehicle." Am. Compl. at 12-13. Plaintiff's claim fails for two reasons.

First, and even assuming § 894 applies in this case, Plaintiff fails to set forth any specific facts tending to show that Defendant used "extortionate means" in attempting to collect on Plaintiff's debt. "An extortionate means is any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person." 18 U.S.C. § 891(7). Because Plaintiff makes no such allegation, his claim fails.

Second, § 894 does not provide a private right of action and is thus "not enforceable through a civil action." *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007). Plaintiff's claim fails on this ground, as well.

### B.   Plaintiff fails to state a claim for "Harassment or Abuse" in violation of 15 U.S.C. § 1692d.

Next, Plaintiff invokes 15 U.S.C. § 1692d—a section of the Fair Debt Collection Practices Act (FDCPA) governing harassment or abuse—as the basis for his claim that Defendant's attempt to repossess Plaintiff's vehicle are criminal in nature. *See* Am. Compl. at 13-14. To state a claim under the FDCPA, a plaintiff must prove four elements: "(1) the plaintiff is a 'consumer' under *id.* § 1692a(3); (2) the debt at issue arose out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant is a debt collector under *id.* § 1692a(6); and (4) through its acts or omissions, the defendant violated the FDCPA." *Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1067 (10th Cir. 2022).

Plaintiff does not set forth allegations tending to support any of the above-cited elements, nor could he as to several of the elements. "[T]he FDCPA typically 'does not apply to creditors trying to collect their own debt.'" *Heidelberger v. Illinois River Ranch Recreational Vehicle Park Prop. Owners Ass'n, Inc.*, No. 24-7056, 2025 WL 573824, at *3 (10th Cir. Feb. 21, 2025) (quoting *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1209 (11th Cir. 2019)). Although the FCDPA recognizes an exception for creditors who use "any name other than his own which would indicate that a third person is collecting or attempting to collect such debts," Plaintiff makes no such allegation here. *See id.* Plaintiff's claim thus fails.

Further, Plaintiff makes no allegations that he is a "consumer" under the FDCPA, but, even assuming he is, the Amended Complaint is devoid of allegations tending to show that Defendant actually violated the FDCPA. *See Tavernaro*, 43 F.4th at 1067 ("Under the FDCPA, debt collectors cannot use false, deceptive, or misleading representations, or unfair or unconscionable means in attempting to collect a debt."); *see also Khalik*, 671 F.3d at 1191 (noting that courts may "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable"). Plaintiff's claim fails for this reason, as well.

### C. Plaintiff fails to state a claim for a "Violation of Oklahoma Statute 12A Regarding Negotiable Instruments."

Last, Plaintiff asserts a claim for "[v]iolation of Oklahoma Statute 12A Regarding Negotiable Instruments," alleging Defendant:

- "refused tender of payment;"

7

- "failed to discharge debt in accordance with 12A O.S. §12A-3-603;"

- "failed to suspend the obligation of the Plaintiff in accordance with 12A O.S. §12A-3-310;" and

- "did not attempt to exchange the instrument tendered for Federal Reserve Notes per 12 U.S.C. §412 as instructed in the letter that accompanied the instrument."

Am. Compl. at 15. Although unclear, it appears to the Court that Plaintiff attempts to use Oklahoma's Uniform Commercial Code (UCC) as a means to assert his "vapor money" theory.

The Court has already explained the unfounded nature of Plaintiff's theory, *see* § I *supra*, and will not belabor the point here. Plaintiff fails to allege any facts supporting a cognizable theory under Oklahoma's UCC. *See McGee v. Nissan Motor Acceptance Corp.*, 619 Fed. Appx. 555, 555 (7th Cir. 2015) ("McGee's complaint theorizes that, under the Uniform Commercial Code as adopted in Illinois, Nissan's refusal to recognize his bill of exchange operated as a discharge of the $13,009 debt. . . . McGee's claims are frivolous.").

## CONCLUSION

For these reasons, the Court concludes that Plaintiff's Amended Complaint is based on, and tethered to, a frivolous, soundly rejected legal theory. Setting that aside, Plaintiff fails to allege sufficient factual matter to state a plausible claim for relief.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss [Doc. No. 7] is **GRANTED**. Plaintiff's claims are **DISMISSED** with prejudice.[5]

---

[5] Rule 15 provides that leave to amend "should be freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). But "the district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend his complaint." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). And a "dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be

A separate judgment shall be entered accordingly.

**IT IS SO ORDERED** this 16th day of May, 2025.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

futile." *Id.* (citing *Grossman v. Novell, Inc.,* 120 F.3d 1112, 1126 (10th Cir. 1997)). Here, the legal theory underlying the entirety of the Amended Complaint, no matter how well-intentioned, lacks any basis in law or fact. The Court thus finds that granting Plaintiff leave to amend would be futile.